IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-01340-PAB-MJW

TIMOTHY DOTY,

    Plaintiff,

v.

CITY AND COUNTY OF BROOMFIELD,
SGT. MIKE JONES, and
STACEY JASPER,

    Defendants.

## ORDER

This matter is before the Court on the Motion Pursuant to Federal Rule of Evidence 702 Regarding Hal Wortzel, M.D. [Docket No. 77] filed by defendants the City and County of Broomfield, Sergeant Mike Jones, and Stacey Jasper.

## I. BACKGROUND

This case arises from an incident that occurred on May 29, 2010 in which plaintiff, while in custody at the Broomfield Detention Center, was found on the floor of his cell and subsequently hospitalized with a head injury. Docket No. 66 at 8, ¶ f. Plaintiff alleges that he fell from the top bunk to which he had been improperly assigned despite his reported seizure disorder. *Id*. at 2-3. He further contends that his fall "severely aggravat[ed] [his] previously existing brain injuries" and that the "aggravated injuries have caused [him] several ongoing disabilities to this day." *Id*. at 4. Pertinent to the instant motion, defendants contend that plaintiff was not injured to the extent he

claims. *Id*. at 7.

Before this incident, plaintiff had suffered several head injuries. The most serious incident occurred in 1985, when plaintiff injured his head in a fall from a three-story building. Docket No. 77 at 2, ¶ 2. In addition, plaintiff reports experiencing several other head injuries–four before and one after May 29, 2010. *Id.*; Docket No. 77-2 at 4-5 (Wortzel dep., at 37, l. 25 to 42, l.19). Plaintiff contends that he experienced new and worsened cognitive and emotional difficulties following his fall from the top bunk on May 29, 2010. Docket No. 66 at 4. Plaintiff intends to call Dr. Hal Wortzel, a forensic neuropsychiatrist, as an expert witness "to testify consistent with his report and deposition regarding Mr. Doty's aggravated and/or new neurological injuries sustained as a result of the incident in May 29, 2010." *Id*. at 12.

## II. FEDERAL RULE OF EVIDENCE 702

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[ ] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the specific proffered opinions must

be assessed for reliability. *See id*.; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Rule 702 imposes on the district court a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). To perform that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597. It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness' opinions must demonstrate that the process by which the witness derived his or her opinions is reliable. *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can and has been

tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

While a plaintiff, as the proponent of the challenged testimony, has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Allstate Sweeping, LLC v. City & Cnty. of Denver*, No. 10-cv-00290-WJM-MJW, 2011 WL 2173997, at *3 (D. Colo. June 2, 2011); a plaintiff need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

### III. ANALYSIS

Defendants' motion seeks to preclude "Dr. Wortzel from offering any expert opinions at trial," Docket No. 77 at 12, which is a sure sign that defendants did not review the Court's Practice Standards before filing their motion. Practice Standard III.G concerns motions to exclude expert testimony. *See* Practice Standards (Civil Cases),

Judge Philip A. Brimmer, § III.G. It requires that a Rule 702 motion "shall identify with specificity each **opinion** the moving party seeks to exclude" (emphasis in original). As the court explained in *Crabbe*, "the Rule 702 determination [is] more *opinion-centric* than *expert-centric*." 556 F. Supp. 2d at 1221 (emphasis in original).

The initial question is therefore whether defendants' motion should be stricken for failure to comply with the Practice Standard. The purpose of the Practice Standard is to focus the analysis on specific opinions. Here, defendants clearly challenge the final paragraph on page one of Dr. Wortzel's report, *see* Docket No. 77-3 at 2, where his principal opinions are stated. *See, e.g.* Docket No. 77 at 11 (heading of Section C: "Dr. Wortzel's Ultimate Opinion That Plaintiff Is More Susceptible to Traumatic Brain Injuries and Corresponding Cognitive Decline As a Result of His Past Head Injuries Is Unreliable and Unsupported by Medical Literature"). Moreover, the motion identifies the nature of defendants' challenges to these opinions. Thus, the Court will construe the defendants' motion to challenge the following statement (and no other) in Dr. Wortzel's report: "[i]t is possible that [plaintiff Timothy Doty's] prior history of extensive injury rendered him more vulnerable to subsequent brain injuries (even mild [traumatic brain injury ("TBI")]), and that his reported experience of functional decline subsequent to his fall at the jail is a consequence of such." Docket No. 77-3 at 2.

Defendants base their challenge on the following arguments: (1) Dr. Wortzel reviewed only one medical record predating plaintiff's May 29, 2010 fall; (2) he relied too heavily on plaintiff's own report of his medical history; (3) he did not cite any medical literature supporting his opinion; and (4) his opinion is not "within a reasonable degree

5

of medical probability." Docket No. 77 at 3. Defendants do not challenge Dr. Wortzel's qualifications. Docket No. 77 at 2 n.2.

In arriving at his opinion, Dr. Wortzel reviewed neuroimaging records from plaintiff's 2006 visit to Swedish Hospital following a seizure; records from plaintiff's visit to Exempla Good Samaritan following his fall in 2010; records from plaintiff's 2011 psychiatric visit to Denver Health Medical Center; records from University Hospital, post-dating the 2010 fall; 2010 records from a neurosurgeon at Boulder Neurological; records from the Stout Street Clinic, plaintiff's treatment provider since the 2010 fall; Social Security records post-dating the 2010 fall; records from Dr. Feldman at Boulder Neurological; records from Dr. Kutz post-dating the 2010 fall; and records of neuroimaging performed after the 2010 fall. Docket No. 77-3 at 1; Docket No. 77-2 at 2-3 (Wortzel dep., at 32, l.7 to 34, l.21). The only medical records that Dr. Wortzel reviewed pertaining to the time period before the May 2010 fall were the records from Swedish Hospital, which included neuroimaging. Docket No. 77 at 6, ¶ A; Docket No. 77-3 at 1. Dr. Wortzel's opinion is also based on a neuropsychiatric examination of plaintiff on January 5, 2013 that lasted for approximately two-and-a-half hours. Docket No. 77-3 at 1. This examination included a Frontal Assessment Battery on which plaintiff scored a 15 out of 18, which Dr. Wortzel found to be "consistent with difficulties with executive dysfunction." Docket No. 77-3 at 2. It also included a clock-drawing exercise, on which plaintiff performed well, and a Mini-Mental State Examination. Docket No. 77-2 at 2 (Wortzel dep., at 30, l.25 to 31, l.16). In his report, Dr. Wortzel discusses only the Frontal Assessment Battery and does not address the other aspects of his examination. Docket No. 77-3 at 2.

Dr. Wortzel's report indicates that he considered plaintiff's self-reported medical history, including plaintiff's statement that he recovered well from his 1985 head injury, but experienced cognitive and emotional changes following the 2010 fall, including difficulties with executive function, an atypical degree of emotional placidity, difficulties with motivation and organization, and resulting functional impairment.  Docket No. 77-3 at 2.

Based on the above information, Dr. Wortzel proffers the following conclusion:

> Although the natural history of mild TBI is one that typically involves complete recovery, usually within weeks or months of the time of injury, that medical literature is generally derived from investigations of individuals who had sustained isolated, uncomplicated mild TBI's.  There is a paucity of medical literature/evidence pertaining to how someone such as Mr. Doty, with a history of prior moderate/severe TBI (and extensive neuroimaging evidence of such), recovers from a subsequent mild TBI.  It is possible that his prior history of extensive injury rendered him more vulnerable to subsequent brain injures (even mild TBI's), and that his reported experience of functional decline subsequent to his fall at the jail is a consequence of such.

Docket No. 77-3 at 2.

At his deposition, Dr. Wortzel testified that, "obviously, in order to attribute deficits to a new injury, you have to know a person's premorbid abilities and status." Docket No. 77-2 at 3 (Wortzel dep., at 36, ll.4-6).  He testified that, based on the evidence he considered, he would estimate that plaintiff was "modestly getting by" prior to the 2010 injury.  *Id*. at 7 (Wortzel dep., at 52, ll.3-9).  He testified that it would not be "unusual or surprising in light of his injury and the imaging results" if, prior to his 2010 fall, plaintiff had experienced the symptoms that he reported as arising out of that incident.  *Id*. at 6 (Wortzel dep., at 48, ll.3-4).  He testified that none of the records he reviewed pertaining to plaintiff's condition before the 2010 fall would objectively

corroborate plaintiff's report that he recovered well from the 1985 fall. *Id*. at 5-6 (Wortzel dep., at 44, l.14 to 45, I.4). He testified that, in comparing the neuroimaging from 2006 with the imaging following plaintiff's 2010 fall, "there wasn't anything that [he] could discern as new or related to the subsequent injury." Docket No. 77 at 7, ¶ B; Docket No. 77-2 at 5 (Wortzel dep., at 44, ll.4-8).

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Fanning v. Sitton Motor Lines, Inc.*, 2010 WL 4261476, at *7 (D. Kan. March 10, 2010) ("to satisfy the strictures of *Daubert*, an expert may not base his or her testimony upon assumptions that are not supported by the evidence"). On the contrary, admissible expert testimony must be based on "actual knowledge and not subjective belief or unsupported speculation." *Mitchell v. Gencorp, Inc.*, 165 F.3d 778, 780 (10th Cir. 1999) (internal citation omitted). An expert's inferences must be "supported by appropriate validation–i.e. 'good grounds,' based on what is known." *Id*.

The parties do not dispute that Dr. Wortzel has expertise in the area of neuropsychiatry. However, his expert report fails to connect this expertise to the particular facts at issue in this case. For example, he states that "the natural history of mild TBI is one that typically involves complete recovery," that the "medical literature is generally derived from investigations of individuals who had sustained isolated, uncomplicated mild TBI's," and that there is a "paucity of medical literature/evidence pertaining to" plaintiff's case. Docket No. 77-3 at 2. Then, without further explanation,

he states that it is possible that plaintiff's previous injuries rendered him more susceptible to brain injury. *Id*. He does not, however, link this conclusion to the evidence he discusses, such as plaintiff's medical history or neuropsychiatric examination, and does not explain how his conclusion is supported by the medical literature. *Id*.

More generally, Dr. Wortzel does not explain what methodology he used to arrive at his conclusion or whether such methodology is one that is generally used by other experts in his field. Thus, the Court is unable to "focus on [the] expert's methodology" as it is required to do, *Goebel v. Denver and Rio Grande Western R.R. Co.*, 346 F.3d 987, 992 (10th Cir. 2003), or apply any of the relevant nondispositive factors to assess reliability. *See 103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). Absent a description of the methodology applied and its context within the field of neuropsychiatry, plaintiff has not carried his burden of showing "that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

Plaintiff asserts that "Dr. Wortzel's opinions are based upon a review of medical literature that identifies a paucity of research on the specific problem at issue, but which draws on other studies to reach basic conclusions that will come as no surprise to any reasonable person." Docket No. 78 at 2, ¶ 1. However, Dr. Wortzel does not cite or discuss any of these "other studies" and plaintiff does not provide information about them in his response. Thus, the Court is unable to perform a "thorough review of the articles" to determine whether, in the aggregate, they support Dr. Wortzel's opinion.

*See Goebel*, 346 F.3d at 993. Likewise, plaintiff asserts that "Dr. Wortzel considered Mr. Doty's self-report, as any doctor would likely do of a patient," Docket No. 78 at 5, ¶ 5, without providing any support for the sufficiency of such self-reported information to draw the conclusion that Mr. Doty was more vulnerable to subsequent brain injuries and that his functional decline is a result of the fall. *See Crabbe*, 556 F. Supp. 2d at 1220 (Mr. Doty, as the "proponent of the expert testimony[,] bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence.").

Without citation to relevant medical literature, explanation of how the cited evidence supports his conclusion, or explanation of the methodology he used to derive his opinion, the Court finds that Dr. Wortzel's opinion does not meet the strictures of Rule 702. *See In re Trasylol Prods. Liability Litigation*, 709 F. Supp. 2d 1323, 1346 (S.D. Fla. 2010) (a proffered expert that merely "regurgitates" facts and then reaches conclusory opinions assumes the role of advocate and invades the province of the trier of fact).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion Pursuant to Federal Rule of Evidence 702 Regarding Hal Wortzel, M.D. [Docket No. 77] filed by defendants the City and County of Broomfield, Sergeant Mike Jones, and Stacey Jasper is GRANTED in part. The opinion of Dr. Hal Wortzel that "[i]t is possible that [plaintiff Timothy Doty's] prior history of extensive injury rendered him more vulnerable to subsequent brain injuries (even mild [traumatic brain injury ("TBI")]), and that his reported experience of functional

decline subsequent to his fall at the jail is a consequence of such," Docket No. 77-3 at 2, is inadmissible under Federal Rule of Evidence 702.

DATED October 4, 2013.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge